**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

THEODORE P. VONFELDT,    )
                    )
          Plaintiff,    )
                    )
          v.           )      1:16cv1179
                    )
MARK A. GRAPSY,       )
                    )
          Defendant.    )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant's Motion to Dismiss (Docket Entry 6; <u>see also</u> Docket Entry 7 (Brief in Support of Motion to Dismiss ("Defendant's Brief")). (<u>See</u> Docket Entry dated Dec. 15, 2016.) For the reasons that follow, the Court should deny the instant Motion.[1]

---

[1] Defendant's counsel electronically filed the instant Motion (via the Court's CM/ECF system) on October 6, 2016, and indicated on the Certificate of Service that, as a result of that manner of filing, "the CM/EFC [sic] system . . . will send notification of such filing to [Plaintiff's] counsel of record: Ronald Dean Ingle, Jr." (Docket Entry 6 at 3.) In fact, at that time, Mr. Ingle had not yet made an appearance in this Court, as he had filed the action on Plaintiff's behalf in state court and Defendant only recently had removed the action to this Court (<u>see</u> Docket Entry 1; <u>see also</u> Docket Entry 2 (Letter dated Sept. 27, 2016, from Clerk to Mr. Ingle, advising him of his obligation to obtain admission to this Court (or to appear specially with an admitted attorney) and giving him 30 days to comply with the registration requirements of the Court's CM/ECF system). Consistent with that state of affairs, the receipt generated by Defendant's filing of the instant Motion
(continued...)

## BACKGROUND

Plaintiff's Complaint alleges claims of alienation of affection and criminal conversation and seeks an award of compensatory and punitive damages, as well as attorney fees. (See Docket Entry 3.) Under North Carolina common law, for an alienation of affection claim, "a plaintiff must prove (1) that [the plaintiff] and [his or her spouse] were happily married, and

---

[1](...continued)
reflected that Mr. Ingle would <u>not</u> receive electronic service of the instant Motion. (<u>See</u> Notice of Elec. Filing, Docket Entry 6.) Plaintiff, however, did not remain unrepresented in this Court for long; on October 14, 2016, Harvey W. Barbee, Jr. appeared on Plaintiff's behalf (Docket Entry 8) and, in so doing, noted that Mr. Ingle also had registered with the Court's CM/ECF system (<u>see id.</u> at 2), a fact confirmed by the receipt for that filing (<u>see</u> Notice of Elec. Filing, Docket Entry 8). Despite having secured representation (from two attorneys with electronic access to the Docket and all filings) well before the deadline for any response to the instant Motion, <u>see</u> M.D.N.C. LR 7.3(f) (allowing 21 days to respond to motions to dismiss), Plaintiff did not respond to the instant Motion until November 22, 2016 (<u>see</u> Docket Entry 12). Neither in that response (<u>see id.</u> at 1-15), nor in any other filing (<u>see</u> Docket Entries dated Oct. 6, 2016, to present), has Plaintiff requested leave to respond to the instant Motion out of time. Under these circumstances, the undersigned Magistrate Judge has <u>not</u> considered Plaintiff's belated response to the instant Motion. <u>See</u> M.D.N.C. LR 7.3(k). Nonetheless, the Court must assess the merits of the instant Motion, whether or not Plaintiff timely opposed it. <u>See</u> <u>Stevenson v. City of Seat Pleasant, Md.</u>, 743 F.3d 411, 416 n.3 (4th Cir. 2014) (explaining that, "[e]ven though [the plaintiff] did not challenge the motions to dismiss, . . . the district court nevertheless ha[d] an obligation to review the motions to ensure that dismissal [wa]s proper"); <u>Gardendance, Inc. v. Woodstock Copperworks, Ltd.</u>, 230 F.R.D. 438, 449 (M.D.N.C. 2005) ("As with summary judgment motions, a court does not grant a motion for dismissal merely because it is uncontested. Rather, a district court should review a motion to dismiss on its merits to determine whether the pleadings are sufficient.").

-2-

that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; and (3) that the wrongful and malicious acts of the defendant produced and brought about the loss and alienation of such love and affection." McCutchen v. McCutchen, 360 N.C. 280, 283, 624 S.E.2d 620, 623 (2006) (internal brackets and quotation marks omitted). For a criminal conversation claim, North Carolina's common law requires proof that "the plaintiff was lawfully married . . . and that during the existence of such marriage . . . the defendant [] had sexual intercourse with [the] plaintiff's [spouse] . . . ." Bryant v. Carrier, 214 N.C. 191, 194-95, 198 S.E. 619, 621 (1938). Effective October 1, 2009, North Carolina statutorily limited alienation of affection and criminal conversation claims from their full reach under the common law, by exempting from liability conduct that (although at a time when the plaintiff and the plaintiff's spouse remained married) "occurs after the plaintiff and the plaintiff's spouse physically separate with the intent of either the plaintiff or [the] plaintiff's spouse that the physical separation remain permanent." N.C. Gen. Stat. § 52-13(a).

To support alienation of affection and criminal conversation claims in this case, the Complaint alleges:

1) "Plaintiff and his wife . . . were lawfully married to each other on May 27, 1995" (Docket Entry 3 at 1) and they remained "happily married from the date of their marriage until on or before

-3-

Sunday, April 26, 2015, when [] Defendant and Plaintiff's wife engaged in sexual intimacy" (id. (emphasis added); see also id. ("[P]rior to Sunday, April 26, 2015, a genuine love and affection existed between Plaintiff and his wife."));

2) "on or before Sunday, April 26, 2015, and then following until [Plaintiff and his wife] separated on September 7, 2015, [] Defendant destroyed and alienated the love and affection existing between Plaintiff and his wife with multiple daily phone calls, visiting [] Plaintiff's wife, having sexual intercourse with Plaintiff's wife, arranging overnight business meetings with [] Plaintiff's wife, and purposely interfering with [] Plaintiff's marriage" (id. at 2 (emphasis added); see also id. ("Plaintiff and his wife separated on September 7, 2015, as a result of Defendant's wrongful and malicious conduct."));

3) "Plaintiff expressed to [] Defendant [Plaintiff's] outrage and disapproval of the continued sexual intercourse, contact, and meetings between Defendant and Plaintiff's wife" (id. (emphasis added); see also id. ("Defendant was well aware that Plaintiff and Plaintiff's wife were lawfully married at the time of Defendant's wrongful and malicious acts.")); and

4) "the love and affection that Plaintiff and his wife enjoyed was destroyed and alienated by the blatant refusal of Defendant to cease seeing, visiting, having sexual intercourse with, and communicating with Plaintiff's wife" (id. (emphasis added); see

-4-

<u>also</u> <u>id.</u> ("Defendant's wrongful and malicious conduct is the cause of the alienation of the love and affection that once existed between Plaintiff and his wife.")).

**DISCUSSION**

Defendant has "move[d] the Court to dismiss the criminal conversation, alienation of affections, and [related] attorney fees claims for relief filed against him and to invalidate the common law torts of criminal conversation and alienation of affections pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1) and 12(b)(6) . . . ." (Docket Entry 6 at 1.)[2] More specifically, Defendant's instant Motion asserts that:

---

[2] "A 12(b)(1) motion addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his [or her] claim, and a 12(b)(6) motion addresses whether [the plaintiff] has stated a cognizable claim, a challenge to the sufficiency of the complaint." <u>Holloway v. Pagan River Dockside Seafood, Inc.</u>, 669 F.3d 448, 452 (4th Cir. 2012). The instant Motion disputes neither Plaintiff's right to proceed in this Court nor the Court's power to adjudicate Plaintiff's claims; to the contrary, Defendant (not Plaintiff) brought this action into this forum (<u>see</u> Docket Entry 1) and the instant Motion explicitly asks the Court to exercise its authority to deny Plaintiff's claims on the ground that the portion of North Carolina's common law undergirding them contravenes the United States Constitution (<u>see</u> Docket Entry 6 at 1-2). Defendant's argument for dismissal thus falls under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1). <u>See generally</u> <u>Nesbit v. Gears Unlimited, Inc.</u>, 347 F.3d 72, 82 (3d Cir. 2003) ("When disposing of a claim brought under an unconstitutional statute, courts ordinarily deny the claim on the merits, on the ground that the statute under which relief is sought is unconstitutional, rather than for lack of subject matter jurisdiction.").

-5-

1) "[c]riminal conversation is unconstitutional both facially and as applied to the facts set out in [] Plaintiff's [C]omplaint as a violation of: <u>due process</u> liberty and privacy interests[ and] equal protection rights <u>guaranteed by the Fourteenth Amendment</u> to the United States Constitution" (<u>id.</u> (emphasis added)); and

2) "[a]lienation of [a]ffections is unconstitutional both facially and as applied to the facts set out in [] Plaintiff's [C]omplaint as a violation of <u>due process</u> liberty and privacy interests[ and] the equal protection rights <u>guaranteed by the Fourteenth Amendment</u> to the United States Constitution, [as well as] <u>freedom of speech rights guaranteed by the First Amendment</u> to the United States Constitution" (<u>id.</u> at 1-2 (emphasis added)).[3]

---

[3] As quoted above, the instant Motion refers to due process <u>and</u> equal protection rights under the Fourteenth Amendment (<u>see</u> Docket Entry 6 at 1-2); however, Defendant's Brief does not mention (much less develop) an Equal Protection Clause argument (<u>see</u> Docket Entry 7 at 1-17), but instead (as concerns the Fourteenth Amendment) relies only on the Due Process Clause (<u>see id.</u> at 2-13). As a result, this Recommendation will not address equal protection principles. <u>See</u> <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); <u>Nickelson v. Astrue</u>, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the court will not address them."), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 21, 2009). Defendant's instant Motion also seeks dismissal of the Complaint based on the North Carolina Constitution (<u>see</u> Docket Entry 6 at 1-2); however, Defendant's Brief does not argue (even in a conclusory, let alone reasoned, manner) that any state constitutional provision establishes any right beyond the rights established by the United States Constitution (<u>see</u> Docket Entry 7 at 16-17). Accordingly, this Recommendation discusses only the
(continued...)

## Fourteenth Amendment Due Process

Defendant's Fourteenth Amendment due process challenge to North Carolina's torts of alienation of affection and criminal conversation relies on <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003). (<u>See</u> Docket Entry 7 at 3-13.)  In that case, the United States Supreme Court reversed the convictions of two men for violating a Texas statute that criminalized homosexual conduct, concluding that "[t]heir right to liberty under the Due Process Clause gives them the full right to engage in their conduct [i.e., sexual practices common to a homosexual lifestyle] without intervention of the government." <u>Lawrence</u>, 539 U.S. at 578.  According to Defendant, "[t]he present case is controlled by <u>Lawrence</u> in that the State is regulating the personal lives of two consenting adults [i.e., Defendant and Plaintiff's spouse] by permitting private rights of action [by Plaintiff] to impose punishment in the form of monetary liability and a civil fine in the form of punitive damages."

---

[3](...continued)
federal constitutional rights at issue. <u>See</u> <u>Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ.</u>, 179 F. Supp. 3d 544, 559 (M.D.N.C. 2016) ("It is not the role of a federal district court to recognize or create new rights under a state constitution.").  Finally, Defendant's instant Motion states that "[a]ny award of punitive damages would be an unconstitutional violation of [his] Due Process Rights under the 5th and 14th Amendments to the United States Constitution and corresponding provisions contained within the Constitution of North Carolina."  (Docket Entry 6 at 2.) Defendant's Brief, however, does not address that matter <u>at all</u> (<u>see</u> Docket Entry 7 at 1-17) and thus neither need the Court, <u>see</u> <u>Belk</u>, 679 F.3d at 152 n.4; <u>Nickelson</u>, 2009 WL 2243626, at *2 n.1.

(Docket Entry 7 at 5; *see also* *id.* at 7 ("The intimate conduct between Defendant [] and [Plaintiff's spouse] falls within the fundamental right of privacy and autonomy protected by the U.S. Constitution as held in *Lawrence*."), 11 ("[T]he right implicated [here] is the right outlined in *Lawrence* for an individual to engage in private, consensual, sexual conduct.").)  In fact, *Lawrence* does not invalidate North Carolina's alienation of affection and criminal conversation torts for at least <u>two</u> reasons.

<u>First</u>, the <u>Lawrence</u> Court expressly delimited its decision to "attempts by the State, or a court, to define the meaning of the relationship [between individuals] or to set its boundaries [A] <u>absent injury to a person</u> or [B] <u>abuse of an institution the law protects</u>."  <u>Lawrence</u>, 539 U.S. at 567 (emphasis added); *see also* <u>id.</u> at 578 ("[This case] does not involve persons who might be injured . . . ."); <u>Muth v. Frank</u>, 412 F.3d 808, 818 (7th Cir. 2005) ("*Lawrence* did not announce a fundamental right of adults to engage in all forms of private consensual sexual conduct."); <u>Nebraska v. Van</u>, 268 Neb. 814, 826, 688 N.W.2d 600, 615 (2004) ("The *Lawrence* Court did not extend constitutional protection to *any* conduct which occurs in the context of a consensual sexual relationship.  Rather, the [Supreme] Court indicated that State regulation of such conduct was inappropriate 'absent injury to a person or abuse of an institution the law protects.'  In addition, it specifically noted

-8-

that the case it was deciding did not involve 'persons who might be injured.'" (emphasis in original) (internal citation omitted) (quoting Lawrence, 539 U.S. at 567, 578)).  In contrast, North Carolina's torts of alienation of affection and criminal conversation directly address conduct which:

A) injures a person (the victim spouse), see Misenheimer v. Burris, 360 N.C. 620, 624, 637 S.E.2d 173, 176 (2006) ("[D]amages for mental anguish are recoverable in cases of criminal conversation.  Wounding a man's [or woman's] feelings is as much actual damages as breaking his [or her] limb.  The difference is that one is internal and the other external; one mental, the other physical.  At common law compensatory damages include, upon principle, and upon authority, salve for wounded feelings. . . . [The] plaintiff testified that the actions of his wife and [the] defendant broke his heart very badly.  As Blackstone described the civil injury in cases of criminal conversation, surely there can be no greater." (internal brackets, citation, ellipsis, and quotation marks omitted)); Cottle v. Johnson, 179 N.C. 426, 429, 102 S.E. 769, 770 (1920) ("[T]he finding . . . that the defendant alienated the affections of the plaintiff's wife . . . entitled [him] to recover compensatory damages, which include loss of the society of his wife, loss of her affection and assistance, as well as for his humiliation and mental anguish[.]"); and

B) <u>abuses a legally-protected institution</u> (marriage), <u>see</u> <u>McCutchen</u>, 360 N.C. at 284, 624 S.E.2d at 624 (noting that "North Carolina's public policy favor[s] the protection of marriage"); <u>Darnell v. Rupplin</u>, 91 N.C. App. 349, 351, 371 S.E.2d 743, 745 (1988) ("A claim for alienation of affections . . . is based on transactions . . . that harm the marital relationship."); <u>Sebastian v. Kluttz</u>, 6 N.C. App. 201, 209, 170 S.E.2d 104, 109 (1969) (observing that criminal conversation claims vindicate "fundamental right that flows from the relation of marriage, and one that must be maintained inviolate for the well-being of society, of one spouse to have exclusive marital intercourse with the other").

<u>Second</u>, the <u>Lawrence</u> Court invalidated the Texas homosexual conduct statute not just because the conduct at issue merited protection under the Due Process Clause, but also because "[t]he Texas statute <u>further[ed] no legitimate state interest</u> which can justify its intrusion into the personal and private life of the individual." <u>Lawrence</u>, 539 U.S. at 578 (emphasis added). Accordingly, even if the Due Process Clause shields to some degree adulterous conduct of the sort the Complaint alleges against Defendant (a conclusion which, as explained above, the plain language of <u>Lawrence</u> does not support), this Court could strike

-10-

down the alienation of affection and criminal conversation torts only if they did not further a legitimate state interest.[4]

North Carolina, however, possesses a legitimate interest in:

A) affording recourse for injury, see Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974) (recognizing states' "legitimate interest in redressing wrongful injury"); Lewis v. Lycoming, 73 F. Supp. 3d 539, 543 (E.D. Pa. 2014) ("[A state] has an interest in promoting recovery by providing a full measure of damages at least for its citizens."); Citibank, N.A. v. Barclays Bank, PLC, 28 F. Supp. 3d 174, 184 (S.D.N.Y. 2013) ("Compensating injured parties for their losses is a legitimate state interest . . . ."); and

B) protecting the sanctity of marriages, see Obergefell v. Hodges, ___ U.S. ___, ___, 135 S. Ct. 2584, 2601 (2015) ("[The Supreme] Court's cases and the Nation's traditions make clear that marriage is a keystone of our social order."); In re Bledsoe, 569 F.3d 1106, 1112 (9th Cir. 2009) (citing "[t]he state's traditional interest in the regulation of marriage"); Potter v. Murray City,

---

[4] Defendant has argued that, "[b]ecause a fundamental right is at issue, a strict scrutiny approach is to be applied to analyze these torts." (Docket Entry 7 at 8; see also id. (noting that, under strict scrutiny, a state "regulation must be closely tailored to promoting a compelling state interest").) That argument lacks merit. As an initial matter, as discussed above, "Lawrence did not announce a fundamental right of adults to engage in all forms of private consensual sexual conduct." Muth, 412 F.3d at 818. Further, "[t]he Supreme Court in Lawrence also did not apply strict scrutiny in reviewing the sodomy statute at issue," id.; instead, the Supreme Court invalidated the Texas law because it "further[ed] no legitimate state interest," Lawrence, 539 U.S. at 578.

760 F.2d 1065, 1070 (10th Cir. 1985) ("Monogamy is inextricably woven into the fabric of our society. It is the bedrock upon which our culture is built."); <u>see also</u> <u>Epstein v. Epstein</u>, 843 F.3d 1147, 1153 (7th Cir. 2016) (Posner, J., concurring) (noting "that adultery remains a crime in 20 of the nation's 50 states").

Moreover, by allowing alienation of affection and criminal conversation claims, North Carolina reasonably furthers the foregoing, legitimate interests, because such tort actions permit victim spouses to obtain redress and discourage third-parties from wrongfully interfering in marriages (particularly through adulterous conduct). <u>See</u> <u>Carlson v. Green</u>, 446 U.S. 14, 21 (1980) ("It is almost axiomatic that the threat of damages has a deterrent effect . . . ."); <u>Pavelka v. Carter</u>, 996 F.2d 645, 650 (4th Cir. 1993) (describing "traditional tort system goals [as] compensating victims and deterring misconduct"); <u>Jones v. Reagan</u>, 696 F.2d 551, 554 (7th Cir. 1983) ("[T]ort law . . . has a deterrent as well as a compensatory function."); <u>Awalt v. Marketti</u>, No. 11C6142, 2012 WL 1161500, at *13 (N.D. Ill. Apr. 9, 2012) (unpublished) ("Deterrence is a well-founded part of our system of tort liability and a proper objective of bringing suit; the common law being an efficient system of rules that has evolved to deter negligent, willful, and reckless conduct . . . ."); <u>Bentzlin v. Hughes Aircraft Co.</u>, 833 F. Supp. 1486, 1493-94 (C.D. Cal. 1993) ("First, tort law is based in large part on deterrence . . . . A second purpose of tort law is

-12-

to punish tortfeasors. . . . Finally, tort law is intended to provide a remedy to innocent victims.").[5]

---

[5] According to Defendant, North Carolina's adoption of no-fault divorce "exposes the irrationality of" alienation of affection and criminal conversation torts. (Docket Entry 7 at 9.) Specifically, Defendant's Brief argues that, "[i]f the state truly wanted to protect [sic] harm to a marriage caused by infidelity, the legislation [regulating divorce] could have required, in addition to a year's separation, that the person wanting the divorce must be innocent of any infidelity." (Id.) The notion that a state cannot authorize any measure to allow recourse for a spouse victimized by adultery and/or to deter adultery, unless the state also forces every person seeking a divorce to prove that he or she has not committed adultery, appears much less rational than North Carolina's legal regime. Defendant further has objected that alienation of affection and criminal conversation claims proceed "only when the aggrieved spouse chooses to pursue someone that can pay a judgment. Essentially, this means that many commit the torts . . . and never face any punishment or liability. If the State were truly concerned with marriage and the effects [alienation of affection] and/or [criminal conversation] had on a marriage, the State would regulate this conduct through a means in which anyone found to have committed the torts would be punished." (Id. at 10.) The Court should reject that line of reasoning, as it effectively would require judicial invalidation of all tort law (as an irrational means of promoting asserted governmental interests). See generally Animal Sci. Prods., Inc. v. China Nat. Metals & Minerals Import and Export Corp., 702 F. Supp. 2d 320, 423-24 (D.N.J. 2010) ("[T]he legal might of tort principles is present through the power of the injured party to act as a 'private attorney general' and to rely on government institutions, i.e., the courts, to civilly penalize the wrongdoer; this is so regardless of the fact that certain victims of tortious conduct might — and in fact do — elect not to enforce their rights."), vacated and remanded on other grounds, 654 F.3d 462 (3d Cir. 2011). Next, Defendant's Brief complains that alienation of affection and criminal conversation torts "provide no deterrent effect because the spouse who engaged in the alleged wrongful conduct (and in many instances may have initiated the conduct) is free to go about his or her life without facing punishment for his or her actions. This disconnect makes plain the lack of rational relationship between [these torts] and any purported interest in protecting marriage." (Docket Entry 7 at 12 (emphasis added).) This argument ignores the
(continued...)

-13-

In sum, the Due Process Clause (as construed in <u>Lawrence</u>) does <u>not</u> invalidate North Carolina's alienation of affection and criminal conversation torts, because:

1) the <u>Lawrence</u> Court expressly exempted from its holding sexual conduct (such as the adulterous conduct alleged in the Complaint) that injures a person (i.e., a victim spouse) and/or that abuses a lawfully-recognized institution (i.e., marriage); <u>and</u>

2) alienation of affection and criminal conversation torts further North Carolina's legitimate interests in providing recourse for victim spouses and deterring wrongful intrusions into marital relationships (unlike the criminal statute in <u>Lawrence</u>, which the Supreme Court found did not further any legitimate state interest).

<u>First Amendment Freedom of Speech</u>

The instant Motion alternatively asks the Court to declare North Carolina's alienation of affection tort (but not its criminal conversation tort) "unconstitutional both facially and as applied

---

[5](...continued)
fact that North Carolina has enacted laws regarding liability and/or eligibility for alimony that address spousal "illicit sexual behavior," N.C. Gen. Stat. § 50-16.3A. Although one may question whether North Carolina has chosen the <u>ideal</u> formula for holding both parties to adultery accountable, Defendant has not shown that North Carolina's approach fails to deter adultery at all. Finally, Defendant has asserted that alienation of affection and criminal conversation torts "ha[ve] no positive effect on divorce rates [and thus] cannot be said rationally to promote marriages." (Docket Entry 7 at 12.) Even if accepted, that assertion would not alter the conclusion that these torts reasonably further North Carolina's legitimate interest in offering victim spouses a means of redress.

-14-

to the facts set out in [] Plaintiff's [C]omplaint as a violation of . . . freedom of speech rights guaranteed by the First Amendment . . . ." (Docket Entry 6 at 1.)[6] In support of that position, Defendant's Brief states that alienation of affection "has no requirement that an adulterous relationship occur between the defendant and [the] plaintiff's spouse. Instead, it only requires that there be 'active participation, initiative, or encouragement on the part of the defendant in causing one spouse's loss of the other spouse's affections.'" (Docket Entry 7 at 14 (quoting Heller v. Somdahl, 206 N.C. App. 313, 316, 696 S.E.2d 857, 861 (2010)).)

From that premise, Defendant's Brief reasons that an alienation of affection claim could arise from "the mere expression of protected speech from one individual to another regarding the plaintiff spouse's relationship with that person. A person can therefore expose themselves [sic] to liability and punishment for honestly speaking about their [sic] feelings for a married person." (Id.; see also id. at 15 ("[A] co-worker who implores a fellow co-worker to leave their [sic] spouse through the use of opinions and the expression of factually correct information would still be

---

[6] "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002) (internal quotation marks omitted).

-15-

subject to punishment in the form of civil liability.").)   This
freedom of speech challenge fails for at least <u>two</u> reasons.

First, Defendant cannot maintain an "as applied" attack based
on the "protected speech" theory articulated in Defendant's Brief,
because the Complaint does not seek to hold Defendant liable "for
honestly speaking about [his] feelings for [Plaintiff's spouse]"
(<u>id.</u> at 14) (or "implor[ing] a fellow co-worker to leave [her]
spouse through the use of opinions and the expression of factually
correct information" (<u>id.</u> at 15)); to the contrary, the Complaint
alleges that Defendant committed alienation of affection by having
sexual relations with Plaintiff's spouse (Docket Entry 3 at 1-2).
"In asserting his as-applied challenge, of course, [Defendant]
cannot obtain relief based on arguments that a differently situated
person might present, or based on other situations not before the
Court."  <u>United States v. Moore</u>, 666 F.3d 313, 319 (4th Cir. 2012)
(internal citation and quotation marks omitted).

Second, Defendant has not made the showing needed to sustain
either of the two types of First Amendment "facial" challenges.
"To succeed in a typical facial attack, [Defendant] would have to
establish that no set of circumstances exists under which [North
Carolina's alienation of affection tort law] would be valid, or
that [such law] lacks any plainly legitimate sweep."  <u>United States
v. Stevens</u>, 559 U.S. 460, 472 (2010) (internal citation and
quotation marks omitted).  Defendant's Brief establishes no such

-16-

thing and instead effectively concedes that the First Amendment's speech protections do not prohibit alienation of affection claims based on the conduct the Complaint alleges against him (i.e., adultery). (See Docket Entry 7 at 14-15.)[7]

"In the First Amendment context, however, th[e Supreme] Court recognizes a second type of facial challenge, whereby a law may be invalidated <u>as overbroad if a substantial number of its applications are unconstitutional</u>, judged in relation to the [law's] plainly legitimate sweep." <u>Stevens</u>, 559 U.S. at 473 (emphasis added) (internal quotation marks omitted); <u>see also Members of City Council of City of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 800 (1984) ("[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."). "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." <u>United States v. Williams</u>, 553 U.S. 285, 293 (2008). As quoted above, Defendant's Brief implies that North Carolina law extends liability for alienation of affection (too) broadly, because it

---

[7] Defendant's concession on this point accords with persuasive authority. <u>See, e.g.</u>, <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1485 (D. Utah 1995) (rejecting argument that "adultery statute infringes on [the] plaintiff's First Amendment right of free expression"); <u>Suddarth v. Slane</u>, 539 F. Supp. 612, 617 (W.D. Va. 1982) ("[A]dultery is not protected by the First Amendment.").

"only requires that there be 'active participation, initiative, or encouragement on the part of the defendant in causing one spouse's loss of the other spouse's affections.'" (Docket Entry 7 at 14 (quoting Heller, 206 N.C. App. at 316, 696 S.E.2d at 861); see also id. at 14-15 (arguing that North Carolina permits an alienation of affection claim against a person who "honestly speak[s] about [his or her] feelings for a married person" or a "co-worker who implores a fellow co-worker to leave [his or her] spouse through the use of opinions and the expression of factually correct information").)

In fact, North Carolina law cabins alienation of affection claims within a much more limited sphere than Defendant has suggested, by requiring proof of adultery or some other conduct manifesting a culpable mental state:

> One who, without privilege to do so, purposely alienates [the] affections [of the plaintiff's spouse] from [the plaintiff], or who has sexual intercourse with [his or her spouse], is liable for the harm thereby caused to [the plaintiff's] legally protected interests. . . .
>
> The gravamen of the action for alienation of affections is the [plaintiff's] loss of [his or] her protected marital right of the affection, society, companionship and assistance of [his or her spouse], [but] where there is no element of sexual defilement of [the plaintiff's spouse], malice must be shown. Malice as used in an action for alienation of affections means injustifiable conduct causing the injury complained of. Malice also means a disposition to do wrong without legal excuse or as a reckless indifference to the rights of others.

Sebastian, 6 N.C. App. at 206, 170 S.E.2d at 106 (emphasis added) (internal citations and quotation marks omitted); see also

-18-

<u>McCutchen</u>, 360 N.C. at 283, 624 S.E.2d at 623 (requiring proof
"that the wrongful and <u>malicious</u> acts of the defendant produced and
brought about the loss and alienation of [the] love and affection
[of the plaintiff's spouse]" (emphasis added) (internal brackets
and quotation marks omitted)).[8]  Moreover, North Carolina law
treats this malicious, mens rea element as immunizing third-parties
from liability for simply offering good-faith advice.  See <u>Bishop</u>
<u>v. Glazener</u>, 245 N.C. 592, 597, 96 S.E.2d 870, 874 (1957) ("[A]
parent may advise and assist his or her child in respect to the
latter's marital relations without liability to the other spouse
for alienation of affections, although separation results, provided
such advice and aid were in good faith, based on a reasonable
belief that the child's welfare makes them necessary, and were not
from malice or other improper motive."); <u>see also</u> <u>id.</u> at 596, 96
S.E.2d at 873 ("It is fundamental to a recovery against a third
person that the alienation of affections resulted from [the
person's] <u>malicious</u> interference." (emphasis added)); <u>Sebastian</u>, 6
N.C. App. at 206, 170 S.E.2d at 106 (recognizing that conduct that
"purposely alienates [the] affections" of the plaintiff's spouse
does not trigger liability if it qualifies as "privilege[d]").

---

[8]  The Supreme Court has identified a law's "scienter
requirement" as a matter "important to [the overbreadth] analyis."
<u>Williams</u>, 553 U.S. at 293-94.

Given that North Carolina law (A) restricts alienation of affection claims to "malicious acts," McCutchen, 360 N.C. at 283, 624 S.E.2d at 623, further defined as adultery or other "injustifiable conduct," Sebastian, 6 N.C. App. at 206, 170 S.E.2d at 106 (internal quotation marks omitted), undertaken with an intent "to do wrong without legal excuse," id. (internal quotation marks omitted), or with "reckless indifference to the rights of others," id. (internal quotation marks omitted), and (B) bars liability for communications made in "good faith," Bishop, 245 N.C. at 597, 96 S.E.2d at 874, or deemed "privilege[d]," Sebastian, 6 N.C. App. at 206, 170 S.E.2d at 106, Defendant cannot show that "a substantial number of [the] applications [of North Carolina's alienation of affection law] are unconstitutional, judged in relation to the [law's] plainly legitimate sweep," Stevens, 559 U.S. at 473 (emphasis added) (internal quotation marks omitted). As a result, the Court should deny Defendant's First Amendment facial overbreadth challenge. See Members of City Council, 466 U.S. at 799 ("In the development of the overbreadth doctrine the [Supreme] Court has been sensitive to the risk that the doctrine itself might sweep so broadly that the exception to ordinary standing requirements would swallow the general rule. In order to decide whether the overbreadth exception is applicable in a particular case, [the Supreme Court] ha[s] weighed the likelihood that [a law's] very existence will inhibit free expression. There

-20-

comes a point where that effect — at best a prediction — cannot, with confidence, justify invalidating a [law] on its face and so prohibiting a State from enforcing the [law] against conduct that is admittedly within its power to proscribe." (internal brackets and quotation marks omitted)).

Simply put, Defendant's First Amendment freedom of speech-based, as-applied and facial attacks on the North Carolina tort of alienation of affection lack merit.

## CONCLUSION

Defendant has not established that Plaintiff's Complaint fails as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Court deny Defendant's Motion to Dismiss (Docket Entry 6).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 14, 2017